**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 25-cv-03350-STV

YVONNE PETERSON,

     Plaintiff,

v.

BENJAMIN THIEL,

     Defendant.

_____

**ORDER**
_____

Chief Magistrate Judge Scott T. Varholak

     This matter comes before the Court on Defendant's Partial Motion to Dismiss Prisoner Complaint Under Fed. R. Civ. P. 12(b)(6) (the "Motion"). [#63] The parties have consented to proceed before the undersigned United States Magistrate Judge for all proceedings, including entry of a final judgment. [##61, 62] This Court has carefully considered the Motion and related briefing, the entire case file and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the Motion. For the following reasons, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

**I.    BACKGROUND**[1]

     Plaintiff has Native American ancestry and has practiced Native American religion since she was eight years old. [#28-1 at 3] From an early age, Plaintiff and her family

_____

[1] The facts are drawn from the allegations in Plaintiff's Fourth Amended Complaint [##28; 28-1; 28-2; 28-3] (the "Complaint"), which must be taken as true when considering the

participated in sweat lodge ceremonies and pipe ceremonies. [*Id.*] Her religious practice requires her to attend such ceremonies, to use a medicine bag which nobody else is allowed to touch or open, and to use prayer beads and stones. [*Id.*]

At all relevant times, Plaintiff was an inmate at Buena Vista Correctional Facility ("BVCF"). [*Id.*] Defendant Benjamin Thiel is the Programs Coordinator at BVCF. [#28 at 2, 4] Defendant Thiel is in charge of scheduling and allowing sweat lodge religious services. [*Id.* at 4]

BVCF's administrative regulations provide that Native American faith groups should be given the opportunity for a sweat lodge ceremony, pipe ceremony, and smudge ceremony every Thursday from 8:00 a.m. until 10:00 a.m. [#28-1 at 4] In Defendant Thiel's office he had all of the materials needed for the sweat lodge ceremony. [*Id.*] Until the Spring of 2025, Defendant Thiel permitted Plaintiff and others to perform their sweat lodge services and would allow the participants one ounce of tobacco a week. [##28 at 4; 28-1 at 1]

On August 21, 2025, Plaintiff and others were permitted to perform a sweat lodge ceremony. [#28-2 at 2] On August 28, 2025, however, when they requested to do another ceremony, Defendant Thiel refused saying that he needed to be notified ahead of time. [*Id.*] Plaintiff explained that such a requirement went against the facility's policy, and that she was going to grieve Defendant Thiel. [*Id.*] Plaintiff's spouse also called the facility and complained. [*Id.*]

---

Motion. *See Wilson v. Montano*, 715 F.3d 847, 850 n.1 (10th Cir. 2013) (citing *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011)).

On September 4, 2025, Plaintiff and another offender asked Defendant Thiel if they were allowed to buy a new peace pipe because theirs had fallen apart. [#28-2 at 2] Defendant Thiel became irritated and said they were too worried about smoking so their unit could not meet for the sweat ceremony that week. [*Id.* at 3] When Plaintiff said she was going to grieve Defendant Thiel, he smiled, said that they could meet, but that he was not giving them any of the materials needed for their ceremony. [*Id.*] In response, Plaintiff grieved Defendant Thiel. [*Id.*]

When Plaintiff's group met on September 18, Defendant Thiel did not bring them any of the materials needed for their ceremony. [*Id.* at 3-4] Defendant Thiel told them that they would need their families to donate directly to him or they could not have any sweat lodge ceremonies until the Spring. [*Id.*] For ten weeks, Defendant Thiel denied Plaintiff and her group the ability to have their sweat lodge ceremony. [*Id.* at 4-6] Plaintiff claims that BVCF had plenty of supplies and that Defendant Thiel was simply retaliating against Plaintiff for the grievance. [##28 at 4; 28-1 at 1, 4; 28-2 at 6]

On October 10, 2025, Major Maes responded to Plaintiff's grievance and said that they could have a sweat lodge ceremony every Thursday and that supplies would be available for the ceremony. [#28-2 at 4] On October 16, 2025, Plaintiff and the rest of the group met and began a pipe ceremony. [#28-1 at 6] Defendant Thiel walked up to the group and demanded that they give him their lighter. [*Id.*] Plaintiff responded that they had just begun the pipe ceremony and Defendant Thiel stated that he did not care and that they were taking too long to use the lighter. [*Id.* at 6-7] Defendant Thiel then stated that he did not care that Plaintiff had grieved him and he did not take it personally.

3

[*Id.* at 7]  Because Defendant Thiel had taken their lighter, the group could not complete the pipe ceremony or the sweat lodge ceremony.  [*Id.*]

On October 23, 2025, Defendant Thiel allowed the group to have their ceremony. [*Id.* at 5, 7]  Defendant Thiel was angry and tried to rush the ceremony.  [*Id.* at 6-7]  He also once again told Plaintiff that he does not take it personally when Plaintiff grieves him and then laughed at Plaintiff.  [#28-2 at 5]

On November 6, 2025, Defendant Thiel said that he was holding a meeting to get a list of supplies that were needed.  [#28-1 at 7]  Defendant Thiel said to make one list and give it to one person.  [*Id.*]  Plaintiff and her group did as requested and only the person with the list went to the meeting.  [*Id.* at 7-8]  Defendant Thiel then declared that the ceremonies would only be held monthly, not weekly, and those who did not attend the meeting could not complain.  [*Id.* at 8]

On November 14, 2025, Plaintiff filled out a form for personal faith property requesting certain religious items.  [*Id.* at 9]  The next week, Plaintiff filled out a kite that outlined the items she requested.  [*Id.*]  Defendant Thiel responded: "not authorized, we did not agree on this method."  [*Id.*]  Plaintiff filed a grievance against Defendant Thiel and her grievance was granted.  [*Id.*]  Nonetheless, on December 4, 2025, Defendant Thiel told the property unit that Plaintiff could not have the items and Plaintiff was forced to mail the items home.  [*Id.*]  Plaintiff filed another grievance against Defendant Thiel and again the grievance was granted.  [*Id.*]  On December 10, 2025, Plaintiff was transferred to Denver Women's Correctional Facility ("DWCF").  [*Id.*]

On October 23, 2025, Plaintiff initiated the instant action.  [#1]  The operative Complaint brings two claims: (1) violation of Plaintiff's First Amendment freedom of

religion, and (2) First Amendment retaliation for the filing of grievances.[2]  [## 28; 28-1; 28-2; 28-3]  On June 29, 2026, Defendant filed the instant Motion seeking to dismiss all but the First Amendment freedom of religion claim.  [#63]  Plaintiff has responded to the Motion [#64] and Defendant has replied [#65].

## II.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  In deciding a motion under Rule 12(b)(6), a court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff."  *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (alteration in original) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  Nonetheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).  "The burden is on the plaintiff

---

[2] The Complaint also mentions the Religious Freedom Restoration Act ("RFRA") and Colo. Rev. Stat. § 17-42-102.  [#28-1 at 1]  In her response, Plaintiff does not object to dismissal of these two claims.  [#64 at 1]  Thus, to the extent Plaintiff's Complaint asserted RFRA and Section 17-42-102 claims, the Motion is GRANTED as to those two claims and those claims are DISMISSED.

to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Id.* (quoting *Twombly*, 550 U.S. at 556).  The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

Finally, "[a] pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). "The *Haines* rule applies to all proceedings involving a pro se litigant."  *Id.* at 1110 n.3. The Court, however, cannot be a pro se litigant's advocate.  *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).  Moreover, pro se parties must "follow the same rules of procedure that govern other litigants." *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (quoting *Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992)).

## III.    ANALYSIS

In the Motion, Defendant argues that Plaintiff has failed to plausibly plead a claim for First Amendment retaliation.  [#63 at 6-7]  To state a First Amendment retaliation claim against a government official, a plaintiff must prove three elements:

> (1) That the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).  Defendant argues that Plaintiff has failed to plausibly plead the second prong of her First Amendment claim. [#63 at 6-7]   According to Defendant, "[b]ecause the allegations demonstrate that

6

[Plaintiff] remained undeterred in the filing of grievances and complaints, the Complaint cannot establish that [Defendant's] actions caused her to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that protected activity." [*Id.* at 7]

The Court disagrees. The problem with Defendant's argument is that the question of "[w]hether [Defendant's] conduct caused [Plaintiff] an injury that would chill a person of ordinary firmness from continuing to engage in protected First Amendment activity is an *objective* standard." *Weise v. Colorado Springs, Colorado*, 421 F. Supp. 3d 1019, 1042 (D. Colo. 2019) (emphasis added) (citing *Eaton v. Meneley*, 379 F.3d 949, 954 (10th Cir. 2004)); *see also Hyberg v. Enslow*, 801 F. App'x 647, 651 (10th Cir. 2020) ("The [person of ordinary firmness] standard for assessing the chilling effect on protected activity is objective."). "This standard 'permits a plaintiff who perseveres despite governmental interference to bring suit,' but precludes claims based on 'a trivial or de minimis injury.'" *Weise*, 421 F. Supp. 3d at 1042 (quoting *Eaton*, 379 F.3d at 954-55). Thus, the fact that Plaintiff continued to grieve Defendant despite having her religious ceremonies taken away because of her grievances does not render her injury sufficiently trivial to fail under the second prong of a First Amendment retaliation claim. And the Tenth Circuit has held, under nearly identical circumstances, that where the "retaliation [for filing grievances] was suspension of [an inmate's] ability to exercise his sincerely held religious beliefs, [such retaliation] would chill a person of ordinary firmness from continuing to engage in [the constitutionally protected] activity." *Tennyson v. Carpenter*, 558 F. App'x 813, 819 (10th Cir. 2014) (quotation omitted). Thus, the Court finds that Plaintiff has plausibly alleged a First Amendment retaliation claim.

This conclusion, however, does not end the analysis because Defendant has also asserted a qualified immunity defense.  [#63 at 7-9]  "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation omitted).  Once the defense of qualified immunity has been raised, "the onus is on the plaintiff to demonstrate '(1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct.'" *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).

"To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent" such that it is "settled law." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018).  The Supreme Court has "not yet decided what precedents—other than [its] own—qualify as controlling authority for purposes of qualified immunity." *Id*. at 66 n.8.  The Tenth Circuit, however, has stated that "[o]rdinarily this standard requires either that there is a Supreme Court or Tenth Circuit decision on point, or that the 'clearly established weight of authority from other courts [has] found the law to be as the plaintiff maintains.'" *Patel v. Hall*, 849 F.3d 970, 980 (10th Cir. 2017) (quoting *Klen v. City of Loveland*, 661 F.3d 498, 511 (10th Cir. 2011)).

The Tenth Circuit has explained the "clearly established" prong of the qualified immunity analysis as follows:

> A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right.  Although plaintiffs can overcome a qualified-immunity defense without a favorable case directly on point, existing precedent must have

8

> placed the statutory or constitutional question beyond debate. The dispositive question is whether the violative nature of the *particular conduct* is clearly established. . . . Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law.

*Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016) (quotations and citations omitted) (emphasis in original). And the Supreme Court has "repeatedly stressed that courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Wesby*, 583 U.S. at 63-64 (quotation omitted).

It is clearly established in the Tenth Circuit that prison officials cannot retaliate against an inmate for filing grievances. *See, e.g.*, *Williams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1991). Likewise, it is clearly established in this Circuit that inmates must have a reasonable opportunity to exercise one's religion. *Makin v. Colo. Dep't of Corrs.*, 183 F.3d 1205, 1210 n.4 (10th Cir. 1999). And given that BVCF permits the type of religious activity allegedly taken away from Plaintiff due to her filing of grievances, Plaintiff has plausibly alleged that the religious activity she had taken away was reasonable even in the prison context. Thus, given the Complaint's allegations and the clearly established principles articulated above, the Court concludes that the right at issue here was clearly established. Thus, at this stage of the proceedings, Defendant is not entitled to qualified immunity on Plaintiff's First Amendment retaliation claim.

## IV.     CONCLUSION

For the foregoing reasons, Defendant's Partial Motion to Dismiss Prisoner Complaint Under Fed. R. Civ. P. 12(b)(6) [#63] is **GRANTED IN PART** and **DENIED IN PART**.

DATED:  July 30, 2026

BY THE COURT:

s/Scott T. Varholak
United States Magistrate Judge